IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KAITLYN TRIMBLE, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN FIRST FINANCE, LLC, <br><br> Defendant. | ) <br> ) <br> ) Civil Action No. 1:24-cv-00969-RDB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### DEFENDANT AMERICAN FIRST FINANCE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS

Defendant American First Finance, LLC ("AFF") submits the following Memorandum of Law in Support of its Motion to Compel Arbitration and to Dismiss:

### I.   INTRODUCTION

Plaintiff Kaitlyn Trimble ("Plaintiff") entered into a Consumer Rental-Purchase Agreement (the "Contract") that includes a bilateral arbitration provision (the "Arbitration Provision"), in which the parties agreed that either party can elect to have any dispute regarding the Contract, or the services provided under the Contract, resolved by a neutral, binding arbitration on an individual, non-class basis. Plaintiff had the right to opt out of the Arbitration Provision within thirty days, but she did not exercise that right. AFF has elected to resolve Plaintiff's individual dispute through arbitration. Therefore, in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), the Court should compel arbitration and dismiss this class action lawsuit.

### II.   FACTUAL BACKGROUND

This case arises out of Plaintiff's rental-purchase of a mattress and several pieces of

furniture. On July 14, 2023, Plaintiff submitted an application that included her personal and financial information. *See* Declaration of Tom Nusspickel ("Nusspickel Decl."), attached as **Exhibit A**, at ¶ 4 and Ex. 1 thereto. Upon approval, Plaintiff signed the Contract with the Arbitration Provision, thereby agreeing that upon the election of either party, any dispute that arose between the parties would be submitted to arbitration on an individual, non-class basis. *See id*. at ¶ 5 and Ex. 2 thereto.

The Arbitration Provision signed by Plaintiff provides that "any claim, dispute or controversy" that arises between Plaintiff and AFF shall be resolved by arbitration:

**ARBITRATION PROVISION**

\*   \*   \*

**1. Certain Definitions…**

> a. The term "Claim" means any claim, dispute, or controversy between you and us (or our related parties) that arises from or relates in any way to this Agreement or any services you request or we provide under this Agreement ("Services"); any of our marketing, advertising, solicitations, and conduct relating to your request for Services; our collection of any amounts you owe; or our disclosure of or failure to protect any information about you. "Claim" is to be given the broadest possible meaning and includes claims of every kind and nature, including, but not limited to, initial claims, counterclaims, cross-claims, and third- party claims, and claims based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, negligence, fraud, or other intentional wrongs), and equity. "Claim" includes disputes that seek relief of any type, including damages and/or injunctive, declaratory, or other equitable relief.
>
> b. Notwithstanding the foregoing, "Claim" does not include any individual action brought by you in small claims court or your state's equivalent court, unless such action is transferred, removed, or appealed to a different court. In addition, except as set forth in the immediately following sentence, "Claim" does not include disputes about the validity, enforceability, coverage, or scope of the Arbitration Provision or any part thereof (including, without limitation, Sections 7(C), (D) and/or (E) of the Arbitration Provision (the "Class Action and Multi-Party Claim Waiver"), the clause in the second sentence of Section 12 of the Arbitration Provision beginning with the words "provided, however," and/or this

> sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide…

Ex. 2 to Nusspickel Decl. at p. 4. Additionally, the Arbitration Provision includes an opt-out clause:

> **3. Right to Reject Arbitration.** If you do not want this Arbitration Provision to apply, you may reject it within 30 days after the date of this Agreement by delivering to us at American First Finance Inc., Attn: Legal Department, P. O. Box 565848 Dallas, TX 75356, a written rejection notice which: (a) provides your name and address and the date of this Agreement; and (b) states that you are rejecting the Arbitration Provision in the Agreement. If you want proof of the date of such a notice, you should send the rejection notice by "certified mail, return receipt requested." If you use such a method, we will reimburse you for the postage upon your request. Nobody else can reject arbitration for you (except an attorney at law you have personally retained); this is the only way you can reject arbitration. Your rejection of arbitration will not affect your right to Services or the terms of this Agreement (other than this Arbitration Provision).

*Id.* at p. 5. And it also includes a class action waiver:

> **7. No Class Actions or Similar Proceedings; Jury Trial Waiver; Special Features or Arbitration. IF YOU OR WE ELECT TO ARBITRATE A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO: (A) HAVE A COURT OR A JURY DECIDE THE CLAIM; (B) OBTAIN INFORMATION PRIOR TO THE HEARING TO THE SAME EXTENT THAT YOU OR WE COULD IN COURT; (C) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR CLASS OPPONENT; (D) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (E) JOIN OR CONSOLIDATE CLAIM(S) INVOLVING YOU WITH CLAIMS INVOLVING ANY OTHER PERSON. THE RIGHT TO APPEAL IS MORE LIMITED IN ARBITRATION THAN IN COURT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.**

*Id*.

### III. ARGUMENT

#### A. Plaintiff's Claims Must Be Submitted to Individual Arbitration under the FAA and Arbitration Provision.

The FAA creates a body of federal substantive law of arbitrability which is applicable to arbitration agreements in contracts that involve interstate commerce. *Perry v. Thomas*, 482 U.S. 483, 489 (1987). Under section 2 of the FAA, arbitration agreements are valid, irrevocable, and enforceable:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or any agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Indeed, Congress enacted the FAA for the purpose of "revers[ing] the longstanding judicial hostility to arbitration agreements…and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Shearson/ American Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987). As a result, federal law strongly favors the arbitration of disputes and requires that courts rigorously enforce arbitration agreements. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274, 281 (4th Cir. 2007) (it is "well established" that the FAA "reflects a liberal federal policy favoring arbitration agreements") (citation omitted).

Further, the Supreme Court has emphasized that arbitration is favored in consumer disputes: "We agree that Congress, when enacting [the FAA], had the needs of consumers, as well as others, in mind…[T]he Act, by avoiding the delay and expense of litigation, will appeal to big business and little business alike, corporate interests [and] individuals. Indeed, arbitration's

advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 280 (1995) (citations omitted, brackets in original). Arbitration agreements remain favored and enforceable even in the face of an alleged disparity in the parties' bargaining power. *See Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204 (2006) (enforcing arbitration clause in allegedly usurious payday loan agreement); *Harris v. Green Tree Financial Corp.*, 183 F.3d 173 (3d Cir. 1999) (enforcing arbitration clause in dispute between consumer and home improvement lender).

Arbitration does not deprive consumers of their substantive rights. It merely changes the forum in which those rights are adjudicated. As the Fourth Circuit has emphasized:

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality and expedition of arbitration.

*In re Cotton Yarn Antitrust Litigation*, 505 F.3d at 282 (citation omitted).

When a motion to compel arbitration is filed, the FAA provides that courts should stay litigation and order the parties to proceed to arbitration upon concluding that a valid arbitration agreement exists. *See* 9 U.S.C. §§ 3-4. The merits of the case may not be considered. *See, e.g., AT&T Technologies, Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649 (1986); *Keystone Shipping Co. v. Masters, Mates & Pilots Pension Plan*, 671 F. Supp. 367, 370 (D. Md. 1987). Under the FAA, a court must compel arbitration where (1) interstate commerce exists, (2) a valid written arbitration agreement exists, and (3) the dispute falls within the scope of the agreement. *See Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997). The FAA's policy favoring arbitration continues to apply when the non-moving party raises a defense to arbitrability. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter

5

of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). As explained below, all three of the requirements outlined in *Glass* are met in this case.

### 1. The parties' transaction implicates interstate commerce.

The FAA applies in this case both by operation of law and by Plaintiff's acceptance of the Contract. Section 2 of the FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce" is valid, irrevocable and enforceable. 9 U.S.C. § 2. The FAA defines "commerce" as "commerce among the several States." 9 U.S.C. § 1. "[T]he word 'involving'…signals an intent to exercise Congress' commerce clause power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction…turn[s] out, *in fact*, to have involved interstate commerce," even if the parties did not contemplate an interstate commerce connection. *Allied-Bruce Terminix*, 513 U.S. at 280 (emphasis in original). The term "commerce" is to be broadly construed. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401-02 (1967); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power"); *Government of the Virgin Islands v. United Industrial Workers, N.A.*, 169 F.3d 172, 176 (3d Cir. 1999) ("The Supreme Court has stated that the FAA's reach coincides with that of the Commerce Clause").

Application of these standards to the facts of the present case leaves no doubt that the FAA applies. The Complaint alleges that Plaintiff is a resident and citizen of Maryland. ECF No. 1-1 ¶ 18. AFF is a citizen of Delaware and Texas. Nusspickel Decl. ¶ 2. While Plaintiff had the option

to terminate her lease at any time, Plaintiff chose to renew her lease of the mattress and furniture, as evidenced by her continued monthly rental payments to AFF. *See id.* ¶ 3 and Ex. 2 thereto. These facts indisputably establish "commerce" within the meaning of Section 2 of the FAA. *See, e.g., Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012) ("We agree with sister circuits, which have concluded that reliance upon funds from a foreign source in a transaction is sufficient to implicate the FAA.") (citation omitted); *Seney v. Rent-A-Ctr., Inc.*, 909 F. Supp. 2d 444, 455 (D. Md. 2012), *aff'd*, 738 F.3d 631 (4th Cir. 2013) (compelling arbitration under a rental-purchase agreement for furniture and mattresses).

Moreover, in accepting the Contract, Plaintiff agreed that the "Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA." Ex. 2 to Nusspickel Decl. at p. 6. This is additional evidence that the transaction involves interstate commerce, and Plaintiff's agreement that the FAA applies must be enforced. *See Staples v. The Money Tree, Inc.*, 936 F. Supp. 856, 858 (M.D. Ala. 1996) ("[B]ecause [the parties] have stipulated that the contract between them involves interstate commerce within the meaning of the FAA, the court must, and will, enforce the stipulation and apply the FAA to the arbitration agreement contained in the contract.") (citing *Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 478-79); *Thomas O'Connor & Co., Inc. v. Insurance Co. of N. Am.*, 697 F. Supp. 563, 566 (D. Mass. 1988).

### 2.     Plaintiff agreed to a valid arbitration provision.

Plaintiff was presented with the Contract and acknowledged her acceptance of the terms therein, including the Arbitration Provision. *See* Ex. 2 to Nusspickel Decl. This formed a binding contract. *See Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d 258, 262 (M.D.N.C. 2016) ("If…the lender…present[ed] an arbitration agreement to Mr. Dillon and Mr. Dillon clicked through and accepted that provision, then the arbitration provisions shown to him are arbitration

agreements enforceable by the lenders under the Federal Arbitration Act…"); *Grant-Fletcher v. Collecto, Inc.*, Civil Action No. RDB-13-3505, 2014 U.S. Dist. LEXIS 64163, at *18 n.2 (D. Md. May 9, 2014) ("[T]he evidence shows that the Plaintiff was made aware of, and had access to, the Terms of Service containing the arbitration clause. Therefore, she agreed to be bound by the Arbitration Agreement at issue."); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 452-53 (E.D.N.Y. 2013) (online agreements which require users to click "I agree" after being presented with terms and conditions "have been enforced by numerous courts within this Circuit.") (citations omitted).

Further, Plaintiff was advised of her right to opt out of the Arbitration Provision and did not do so within the specified period. *See* Nusspickel Decl. ¶¶ 5-6; *see also Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075-77 (9th Cir. 2014) (individual who is provided opportunity to opt out of arbitration agreement is "free not to arbitrate," and in declining opportunity, individual makes choice to arbitrate potential claims); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) (distinguishing mandatory arbitration agreement from one in which individual is free to opt out); *Black v. JP Morgan Chase & Co.*, Civil Action No. 10-848, 2011 U.S. Dist. LEXIS 99428, at *19 (W.D. Pa. Aug. 25, 2011) (finding that, because plaintiff was given right to opt out and failed to do so, court could not conclude that plaintiff "lacked a meaningful choice").

### 3.   Plaintiff's claims fall within the broad scope of the arbitration provision.

The Arbitration Provision encompasses all of Plaintiff's claims. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25; *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710-11 (4th Cir. 2001) (the "liberal federal policy favoring arbitration agreements" requires that "all ambiguities be resolved in favor of arbitration"); *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349-50 (4th Cir. 2001) (citations omitted) ("[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. A court should not deny a request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

Here, the Arbitration Provision applies to "any claim, dispute, or controversy" including "claims based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, negligence, fraud, or other intentional wrongs), and equity." Ex. 2 to Nusspickel Decl. at p. 4. Plaintiff's Complaint asserts two statutory claims for violations of the Maryland Consumer Loan Law ("MCLL") and Maryland Rental-Purchase Agreement Act ("MRPAA"). *See generally* Compl, ECF No. 1-1. The Arbitration Provision encompasses these claims. *See Koenick v. Citibank (S.D.), N.A.*, No. AW-05-1006, 2005 U.S. Dist. LEXIS 37499 (D. Md. June 7, 2005) (compelling arbitration of state law usury and unconscionability claims); *Walther v. Sovereign Bank*, 386 Md. 412, 872 A.2d 735 (Md. 2005) (compelling individual arbitration of claims under Maryland Secondary Mortgage Loan Law).

> **B.    Pursuant to the Class Action Waiver, Plaintiff Must Pursue Her Claims on an Individual Basis.**

Plaintiff's claims must be pursued on an individual basis in arbitration. As the Supreme Court has explained, it is improper to force a party into a class proceeding to which it did not agree because arbitration "is a matter of consent." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). As such, "a party may not be compelled under the FAA to submit to class

9

arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 684 (emphasis in original). Applying this principle, the Supreme Court held in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011), that the California Supreme Court's rule restricting enforcement of class action waivers was preempted by the FAA because it interfered with the fundamental attributes of arbitration and created a scheme inconsistent with the FAA. The Supreme Court reiterated in *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013), that courts "must rigorously enforce" arbitration agreements according to their terms. *Id.* at 2309. There, the Supreme Court reversed the Second Circuit and enforced a class action waiver in an arbitration agreement, ruling that such a waiver in an FAA-governed arbitration agreement is enforceable, even if the plaintiff's costs of individually arbitrating a claim exceed the potential individual recovery. *Id.* at 2311-12.

The Fourth Circuit has consistently upheld the enforceability of class action waivers. *See, e.g.*, *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 184 (4th Cir. 2013) ("we hold that the district court erred in concluding that the class action waiver was unconscionable and rendered the Arbitration Clause unenforceable on that ground."); *Noohi v. Toll Bros.*, 708 F.3d 599, 606 (4th Cir. 2013) (explaining that *Concepcion* "prohibited courts from altering otherwise valid arbitration agreements by applying the doctrine of unconscionability to eliminate a term barring classwide procedures."); *see also King v. Capital One Bank (USA), N.A.*, Case No. 3:11-cv-00068, 2012 U.S. Dist. LEXIS 163562, at *24-25 (D. Md. Nov. 15, 2012) ("Applying *Concepcion*…to this case, I find there is no basis upon which to find the arbitration clause and class action waiver unconscionable…[and] [a]s a result, the arbitration clause containing the class action waiver is valid and enforceable.").

10

Here, the Arbitration Provision expressly prohibits class claims. Ex. 2 to Nusspickel Decl. at p. 5. Accordingly, Plaintiff may not pursue or proceed with her class claims before this Court or in arbitration.

### C. Dismissal of the Case Is Proper.

Where, as here, all of the claims are arbitrable, the Court should order arbitration and dismiss the case. *Bailey v. Thompson Creek Window Co.*, No. 21-00844-LKG, 2021 WL 5053094, *9 (D. Md. Nov. 1, 2021) (dismissing the complaint and ordering the parties to proceed to arbitration on each of plaintiff's claims); 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."). Alternatively, because all of Plaintiff's claims are subject to and should be compelled to arbitration, the Court should stay these proceedings with respect to Plaintiff's individual claims and dismiss the class claims. 9 U.S.C. § 3; *Katz v. Cellco Partnership*, 794 F. 3d 341, 347 (2d Cir. 2015) (holding Section 3 of the FAA mandates a Court issue a stay of proceedings when "all of the claims in an action have been referred to arbitration" and a stay is requested).

## IV. CONCLUSION

For the foregoing reasons, AFF respectfully requests that the Court dismiss this case and order the parties to arbitrate Plaintiff's claims on an individual basis.

Dated: May 3, 2024

Respectfully submitted,

/s/_____
Jessica L. Farmer (Bar # 18978)
Richard A. Ochran, Jr. (Bar # 21247)
HOLLAND & KNIGHT LLP
800 17th Street N.W.
Suite 1100
Washington, D.C. 20006

Telephone: (202) 955-3000
Jessica.Farmer@hklaw.com
Richard.OchranJr@hklaw.com

Bryan O. Balogh (*pro hac vice*)
Allyson R. Mancuso (*pro hac vice*)
HOLLAND & KNIGHT LLP
1901 6th Avenue N.
Suite 1400
Birmingham, AL 35203
Telephone: (205) 226-5700
Bryan.Balogh@hklaw.com
Allyson.Mancuso@hklaw.com

*Attorneys for Defendant*
*American First Finance, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of May, 2024, I caused the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS to be served on the following person[s] by the Court's CM/ECF system:

Benjamin H. Carney
Richard S. Gordon
GORDON, WOLF & CARNEY, CHTD.
11350 McCormick Road, Executive Plaza 1
Suite 1000
Hunt Valley, Maryland 21031
Telephone: (410) 825-2300
Facsimile (410) 825-0066
Email: bcarney@GWCfirm.com
rgordon@GWCfirm.com

*Attorneys for Plaintiff*

/s/
Jessica L. Farmer