IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KAITLYN TRIMBLE, *individually and on behalf of all others similarly situated*, | ) ) ) |
| | ) Civil Action No. 1:24-cv-00969-RDB |
| Plaintiff, | ) ) |
| v. | ) ) |
| AMERICAN FIRST FINANCE, LLC, | ) ) |
| Defendant. | ) |

**DEFENDANT AMERICAN FIRST FINANCE, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Defendant American First Finance, LLC ("AFF") submits the following Reply in Support of its Motion to Compel Arbitration:[1]

**I.   INTRODUCTION**

A change-of-terms provision (the "Change Clause") not included within, and inapplicable to, an arbitration agreement does not render the parties' mutual promises to resolve disputes in arbitration illusory. Yet this is exactly what Plaintiff Kaitlyn Trimble ("Plaintiff") argues in her Opposition. Relying primarily on *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656 (Md. 2003), Plaintiff argues the Change Clause renders AFF's promise to arbitrate illusory.[2] The Court should reject Plaintiff's argument for three reasons.

---

[1] In its initial Motion and Brief, AFF requested that the Court compel arbitration and dismiss the case. The United States Supreme Court, however, issued a decision since that time holding trial courts must stay, rather than dismiss, the underlying action pending completion of the arbitration process. *See Smith v. Spizzirri*, 144 S. Ct. 1173, 1177-78 (2024). In accordance with this recent ruling, AFF respectfully requests that this Court compel arbitration and stay the case until the arbitration proceedings conclude.

[2] In *Cheek*, the Maryland Court of Appeals held the parties' arbitration agreement lacked consideration because it allowed the defendant to "alter, amend, modify, or revoke the [Arbitration] Policy at its sole and absolute discretion at any time with or without notice." 835

First, *Cheek* is distinguishable because the Arbitration Provision to which Plaintiff expressly agreed is separate and distinct from the Consumer Rental-Purchase Agreement (the "Agreement") Plaintiff executed. Although both the Agreement and the Arbitration Provision appear in the same document, the Arbitration Provision includes its own separate and distinct terms from those included the Agreement.[3] Indeed, the delegation clause included within the Arbitration Provision expressly distinguishes between the Agreement and the Arbitration Provision, thus reflecting the parties' intention that each is governed by its own distinct terms. Because the Change Clause is inapplicable to the Arbitration Provision, the *Cheek* rule would not prohibit arbitration. *See Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 544 (4th Cir. 2005) (holding where the change-of-terms clause is included in a separate contract, it is inapplicable to the arbitration agreement.)

Second, even if the *Cheek* rule applied, AFF's promise to arbitrate is not an illusory promise because the Change Clause, though inapplicable, requires written notice of changes. The *Cheek* rule only bars arbitration where unilateral changes to an arbitration provision are permitted without notice. *See Stoner v. MacroGenics, Inc.*, No. CV SAG-23-02529, 2024 WL 327085, at *2 (D. Md. Jan. 29, 2024) (holding change-of-terms clause in agreement was not illusory where modifications were required to "be in writing"). Here, the Change Clause states all changes must be in writing; therefore, *Cheek* would not apply.

---

A.2d at 658. In other words, an arbitration agreement is unenforceable under Maryland law if it can be unilaterally modified without notice. Courts have dubbed this tenet of Maryland law as the "*Cheek* rule." *See, e.g., Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 611 (4th Cir. 2013).

[3] The Arbitration Provision is separately labeled "ARBITRATION PROVISION" and includes its own set of terms numbered 1-13. *See generally* Ex. 2 to Nusspickel Decl. at pp. 4-6. The terms include, among other things, pre-dispute resolution procedures, a survival and severability clause, and a governing law clause. *See id.* When read as a whole, the parties obviously intended that the Arbitration Provision was to stand on its own terms, separate and distinct from the terms specifically delineated in the Agreement.

Finally, by arguing that the consideration is illusory under the Change Clause, Plaintiff essentially challenges the Agreement as a whole, which triggers the delegation clause in the Arbitration Provision. The delegation clause provides "any dispute or argument that concerns the validity and enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide." Ex. 2 to Nusspickel Decl. at p. 4, ¶ 1b. Under the FAA and its progeny, the Court must respect the delegation clause and refrain from deciding disputes regarding the Agreement's validity, reserving such matters for the arbitrator.

For these reasons, the Court should compel arbitration.

## II.   ARGUMENT

### A.   The *Cheek* Rule Does Not Apply Because the Change Clause Does Not Appear in or Apply to the Arbitration Provision.

The *Cheek* rule is not applicable because the Change Clause appears outside the four corners of the Arbitration Provision. *See Hill*, 412 F.3d at 544 ("[T]he court below, per *Cheek*, was not allowed to look beyond the separate Arbitration Agreement, signed by the parties, to determine whether the agreement was supported by consideration."). Courts conducting a *Cheek* analysis "examine 'only the language of the arbitration agreement itself.'" *Coady v. Nationwide Motos Sales Corp.*, 32 F.4th 288, 291 (4th Cir. 2022) (quoting *Hill*, 412 F.3d at 543). "[T]o go beyond the confines of the arbitration agreement itself and into an analysis of the validity of the larger contract is an inquiry [the Court] cannot make." *Cheek*, 835 A.2d at 656.

Plaintiff mistakenly suggests this Court may look to the extraneous Change Clause because the Arbitration Provision is included in the same document as the Agreement. The Agreement and Arbitration Provision, however, reflect distinct obligations. *See Cheek*, 835 A.2d at 665 ("mutual promises to arbitrate act as 'an independently enforceable contract.'") (quoting *Holmes v. Coverall North America, Inc.*, 649 A.2d 365, 370 (Md. 1994)). Notably, the Arbitration Provision is set

3

apart from the rest of the Agreement with its own heading and its own independently numbered terms. *See generally* Ex. 2 to Nusspickel Decl. at pp. 4-6. There are also references within both the Agreement and Arbitration Provision that distinguish the two. For example, Paragraph 1b of the Arbitration Provision distinguishes the Arbitration Provision from the Agreement:

> "Claim" does not include disputes about the validity, enforceability, coverage, or scope of the Arbitration Provision or any part thereof (including, without limitation, Sections 7(C), (D) and/or (E) of the Arbitration Provision (the "Class Action and Multi-Party Claim Waiver"), the clause in the second sentence of Section 12 of the Arbitration Provision beginning with the words "provided, however," and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

*Id*. at p. 4, ¶ 1b. Moreover, the Arbitration Provision and the Agreement each have their own governing law clauses, which would be unnecessary and superfluous if they were regarded as one contract. *Compare id.* at p. 4, ¶ 26 *with* p. 6, ¶ 11. These key distinctions reflect the parties' intention for the Arbitration Provision to have its own separate terms and obligations.

The Arbitration Provision is distinguishable from those evaluated in *Cheek* and its progeny. Unlike here, the change-of-terms clause in *Cheek* was included within the arbitration provision, and importantly, its applicability to the arbitration provision was not disputed. *See* 835 A.2d at 658. The Maryland Court of Appeals held the promise to arbitrate was illusory because, by the arbitration provision's own terms, that specific promise could be unilaterally revoked at any time. *Id*. at 149.

In contrast, the Change Clause here is not included within the Arbitration Provision. *See* Ex. 2 to Nusspickel Decl. at p. 3, ¶ 21. Nor does it reference the Arbitration Provision or even suggest its applicability to the parties' mutual promises to arbitrate. *See id.* ("You understand that no changes may be made to this *Agreement* except by us in writing.") (emphasis added). The

4

Change Clause applies only to the Agreement, which is defined as the Consumer Rental-Purchase Agreement, not the Arbitration Provision. *See id.* at p. 1. *Cheek* is, therefore, easily distinguishable.

The other cases primarily relied upon by Plaintiff are also easily distinguishable. *See Coady v. Nationwide Motos Sales Corp.*, 32 F.4th 288 (4th Cir. 2022); *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582 (D. Md. 2013); *Raley v. Whitestake Improvements LLC*, 625 F. Supp. 3d 457 (D. Md. 2022); and *Brent v. Priority 1 Auto. Grp., BMW of Rockville*, No. PWG-14-1705, 2016 WL 9724975 (D. Md. Aug. 4, 2016). In each of these cases, the plaintiffs signed acknowledgement forms that included a change-of-terms clause. *See Coady*, 32 F.4th at 292; *Caire*, 982 F. Supp. 2d at 594; *Raley*, 625 F. Supp. 3d at 460-61; *Brent,* 2016 WL 9724975, at *2. The acknowledgement forms, in turn, referenced or incorporated the arbitration agreements, essentially allowing the defendants to change the terms of the arbitration agreements without notice. *See Coady*, 32 F.4th at 290; *Caire*, 982 F. Supp. 2d at 594; *Raley*, 625 F. Supp. 3d at 464; *Brent,* 2016 WL 9724975, at *8.

Those are important, determinative facts not present here. *See generally* Ex. 2 to Nusspickel Decl. The Change Clause is included only in the Agreement and does not mention the Arbitration Provision. *See id.* at p. 3, ¶ 21. The Change Clause, therefore, does not apply to the Arbitration Provision, and *Coady*, *Caire*, *Raley*, and *Brent* do not prohibit compelling arbitration in this case.

Finally, Plaintiff cites to *Ford v. Genesis Fin. Sols., Inc.*, CV-DLB-23-2156, 2024 WL 1340356 (D. Md. Mar. 28, 2024); *Bailey v. Mercury Fin., LLC*, CV-DKC-23-827, 2023 WL 6244591 (D. Md. Sept. 26, 2023); *Johnson v. Cont'l Fin. Co., LLC*, 8:22-CV-02001-PX, 2023 WL 5804281 (D. Md. Sept. 7, 2023); and *Jones v. Prosper Marketplace, Inc.*, GJH-21-1126, 2022 WL 834210 (D. Md. Mar. 21, 2022) as evidence of recent decisions from this Court denying motions

to compel arbitration because of change-of-terms clauses. Three of these cases are currently on appeal to the Fourth Circuit.[4] *See Ford v. Genesis Fin. Sols., Inc.*, No. 24-1341 (4th Cir. April 19, 2024); *Bailey v. Mercury Fin., LLC*, No. 23-2133 (4th Cir. Oct. 30, 2023); *Johnson v. Cont'l Fin. Co., LLC*, No. 23-2047 (4th Cir. Oct. 10, 2023) (consolidated with *Crider v. Cont'l Fin. Co., LLC*, No. 23-2049 (4th Cir. Oct. 10, 2023)). Regardless, those cases are factually distinguishable because, unlike the Arbitration Provision involved here, none of the arbitration agreements in those cases are independent and distinct from the underlying contract. *See Ford*, 2024 WL 1340356, at * 8; *Bailey*, 2023 WL 6244591, at * 5; *Johnson*, 023 WL 5804281, at * 6; *Jones*, 2022 WL 834210, at * 15. Therefore, *Ford*, *Bailey*, *Johnson*, and *Jones* are distinguishable.

This case more closely resembles *Hill*. There, the Fourth Circuit held *Cheek* was not applicable because the arbitration agreement was separate from the contract that included the change-of-terms clause. *Hill*, 412 F.3d at 544. The court, therefore, correctly held it could not apply the extraneous change-of-terms clause to the arbitration agreement. *Id.*

It does not matter that the Agreement and Arbitration Provision appear in the same document. As in *Hill*, they reflect different terms and obligations, as evidenced by the separate headings, independent numbering, distinct terms, and express references distinguishing between the Agreement and the Arbitration Provision. *See generally* Ex. 2 to Nusspickel Decl. This Court should, therefore, apply the holding from *Hill*, reject Plaintiff's argument that the Arbitration Provision reflects an illusory promise, and compel arbitration.

---

[4] *Jones* was also appealed to the Fourth Circuit but was voluntarily dismissed while the appeal was pending. *See Jones v. Prosper Marketplace, Inc.*, 23-1382, 2023 WL 11015611, at *1 (4th Cir. June 2, 2023)

#504028746_v3

### B.     The *Cheek* Rule Does Not Apply Because the Change Clause Requires Written Notice.

Consideration for an arbitration agreement is illusory only when the arbitration agreement can be unilaterally modified without notice. *Cheek*, 835 A.2d at 669; *see also Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (holding an arbitration agreement was illusory where one party had "unfettered right" to alter it without notice). Arbitration agreements that allow for unilateral changes with notice, however, are enforceable. *See, e.g.*, *Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547, 594-95 (Md. 2006); *Harby ex rel. Brooks v. Wachovia Bank, N.A.*, 915 A.2d 462, 470-71 (Md. Ct. Spec. App. 2007); *Mbongo v. Robinhood Markets, Inc.*, No. 714, Sept. Term, 2021, 2022 WL 621797, at *7 (Md. Ct. Spec. App. Mar. 3, 2022).

Providing notice of changes in writing is sufficient consideration under *Cheek*. *See Stoner*, 2024 WL 327085, at *2. In *Stoner*, this Court declined to follow the *Cheek* rule and held an arbitration agreement was valid and enforceable because the change-of-terms clause stated that any changes "must be in writing." *Id*. at *1-2.

Here, the Change Clause is similar to the change-of-terms clause in *Stoner*. The Change Clause provides any changes must be "in writing." *See* Ex. 2 to Nusspickel Decl. at p. 3, ¶ 21. This is sufficient notice under a *Cheek* analysis. *See Stoner*, 2024 WL 327085, at *2. Even if the Change Clause is applicable to the Arbitration Provision, there is still sufficient consideration to support the parties' mutual promises to arbitrate their disagreements because written notice would be required. Accordingly, this Court should compel arbitration.

### C.     Plaintiff's Challenge to the Agreement's Consideration Triggers the Delegation Clause.

The parties agreed that any challenge to the Agreement as a whole is reserved for an arbitrator. Ex. 2 to Nusspickel Decl. at p. 4, ¶ 1b ("any dispute or argument that concerns the

7

#504028746_v3

validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide."). It is well established that "parties can agree to arbitrate 'gateway' questions of 'arbitrability'" and "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce…" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69-70 (2010). Thus, where an agreement gives the court exclusive authority to decide whether the arbitration agreement is enforceable, but the plaintiff instead challenges the validity of the agreement as a whole, the issue is for the arbitrator to decide. *Id*. at 70-72. If a court concludes that the parties intended such a delegation, its work is finished and arbitration must be compelled without addressing the merits of any challenge to arbitrability. *Id*.; *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). Indeed, "questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court." *Preston v. Ferrer*, 522 U.S. 349, 349 (2008).

Plaintiff's illusory consideration argument is essentially attacking the validity of the Agreement, yet Plaintiff asserts the delegation clause is not triggered because the attack on consideration goes to contract formation, rather than validity. Several courts, including the Fourth Circuit, have rejected this exact argument. *See, e.g.*, *Amos* 74 F.4th at 595 n. 4; *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 886-87 (6th Cir. 2021) (holding challenge to change-of-terms clause was a challenge to the entire contract that was reserved for the arbitrator because there was no way the "[clause] operate[d] on the [arbitration] provision any differently than it operate[d] on other provisions"); *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018) (holding the "allegation that a particular provision of the contract is illusory is properly considered a validity challenge rather than a formation challenge."); *In re Cox Enters., Inc. Set-*

8

*top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1211-12 (10th Cir. 2016) (holding a challenge based upon a change of terms clause located within a broader contract in which arbitration provision was located "can prevail only as an attack on the [] agreement as a whole" and, thus, "must be resolved by an arbitrator"); *see also Coady*, 32 F.4th 293 (holding the consideration issue determined whether the subject contract was "unenforceable"); *Noohi v. Toll Bros.*, 708 F.3d 599, 605 (4th Cir. 2013) (same).

Even if this Court were to consider Plaintiff's illusory consideration argument as a "formation" challenge, the arbitrator would still necessarily have to decide the issue because Plaintiff effectively challenges the entire Agreement. Plaintiff admits the Agreement was formed and existed, and her claims turn on the fact that she operated under the Agreement for years. Yet, she now effectively argues the Agreement was never formed because there was no consideration under the Change Clause. The delegation clause is, therefore, triggered, and this Court should compel arbitration and allow the arbitrator to decide contract enforceability.

### III.  CONCLUSION

For the foregoing reasons, AFF respectfully requests that the Court compel arbitration of Plaintiff's individual claims and stay the case pending resolution of the arbitration.

Dated:  June 21, 2024

        Respectfully submitted,

        */s/ Allyson R. Mancuso*
        Jessica L. Farmer (Bar # 18978)
        Richard A. Ochran, Jr. (Bar # 21247)
        HOLLAND & KNIGHT LLP
        800 17th Street N.W.
        Suite 1100
        Washington, D.C. 20006
        Telephone: (202) 955-3000
        Jessica.Farmer@hklaw.com
        Richard.OchranJr@hklaw.com

                                  Bryan O. Balogh (*pro hac vice*)
                                  Allyson R. Mancuso (*pro hac vice*)
                                  HOLLAND & KNIGHT LLP
                                  1901 6th Avenue N.
                                  Suite 1400
                                  Birmingham, AL 35203
                                  Telephone: (205) 226-5700
                                  Bryan.Balogh@hklaw.com
                                  Allyson.Mancuso@hklaw.com

                                  *Attorneys for Defendant*
                                  *American First Finance, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of June, 2024, I caused the foregoing REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION to be served on the following person[s] by the Court's CM/ECF system:

Benjamin H. Carney
Richard S. Gordon
GORDON, WOLF & CARNEY, CHTD.
11350 McCormick Road, Executive Plaza 1
Suite 1000
Hunt Valley, Maryland 21031
Telephone: (410) 825-2300
Facsimile (410) 825-0066
Email: bcarney@GWCfirm.com
rgordon@GWCfirm.com

*Attorneys for Plaintiff*

                                        */s/ Allyson R. Mancuso*
                                        Allyson R. Mancuso (*pro hac vice*)