IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KAITLYN TRIMBLE, *individually, and on behalf of all others similarly situated,* | * |
| | * |
| *Plaintiff,* | |
| v. | *   Civil Action No. RDB-24-0969 |
| AMERICAN FIRST FINANCE, LLC, | * |
| *Defendant.* | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM ORDER**

This case arises out of a contract dispute between Plaintiff Kaitlyn Trimble ("Plaintiff" or "Trimble") and Defendant American First Finance, LLC ("Defendant" or "American First"), which provided a payment plan to finance Trimble's purchase of several items of furniture. (ECF No. 4 ¶ 26). On March 1, 2024, Trimble initiated an action against American First in the Circuit Court for Prince George's County, Maryland, by filing a two-count Complaint alleging violations of the Maryland Consumer Loan Law ("MCLL") (Count I) and the Maryland Rental-Purchase Agreement Act ("MRPAA") (Count II). (ECF No. 4.) On April 3, 2024, Defendant timely removed the case to this Court, which has diversity jurisdiction pursuant to both 28 U.S.C. § 1332(a) and the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453. (ECF No. 1.)

Currently pending before this Court is Defendant's Motion to Compel Arbitration ("Defendant's Motion").[1] (ECF No. 15.) Plaintiff has responded in opposition (ECF No.

---

[1] Defendant's initial motion was a Motion to Compel and Dismiss. (ECF Nos. 15, 16.) However, in its reply, Defendant requested the Court only consider its motion as a Motion to Compel in accordance with a ruling from the United States Supreme Court instructing district courts to stay—rather than dismiss—underlying

1

20), and Defendant has replied (ECF No. 21). The parties' submissions have been reviewed, and no hearing is necessary. Lc. R. 105.6 (D. Md. 2023). For the forthcoming reasons, Defendant's Motion to Compel Arbitration (ECF No. 15) is GRANTED, and this case is STAYED pending the completion of the arbitration process.

## BACKGROUND

Trimble's claims relate to her "rental-purchase" contract with American First, a company that "contracts with third-party merchants…to provide alternative" payment options for the third-party retailer's customers. (ECF No. 4 ¶¶ 27, 4). On July 14, 2023, Trimble purchased several items of furniture, including a mattress, mattress protectors, storage drawers, headboard, footboard, rail, and bed foundation from furniture retailer American Freight, who partners with American First. (*Id.* ¶¶ 98–101.) In so doing, she signed a six-paged Consumer Rental-Purchase Agreement ("Agreement") that stated a total cash price of $1,779.94. (ECF No. 16, Ex. 2.). This Agreement also included a "delivery fee" of $209.99 and a "processing fee" with tax that totaled an additional $53.00. (*Id.*) On its third page, the Agreement provided that "no changes may be made to this Agreement except by us in writing" (the "Change Clause"). (ECF No. 16, Ex. 2 ¶ 21.)

The Agreement also contained an Arbitration Provision that allows either party to invoke arbitration as to "any claim, dispute, or controversy" arising under or relating to the Agreement. (ECF No. 16 at 2.) The provision provided, in relevant part:

---

actions pending completion of arbitration. (ECF No. 21); *see Smith v. Spizzirri*, 601 U.S. 472, 475–76, 144 S. Ct. 1173, 1177–78 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit…"). Because Defendant now requests a stay of the case until the conclusion of the arbitration proceedings (ECF No. 21), this Court construes Defendant's Motion as a Motion to Compel Arbitration only.

2

> [The Arbitration Provision] sets forth when and how claims…will be arbitrated instead of litigated in court. This arbitration provision governs "claims" you assert against us or any "related party" of ours and "claims" we or any related party assert against you….Unless prohibited by applicable law and unless you reject the Arbitration Provision…you and we agree that either party may elect to require arbitration of any Claim…

(*Id.*)  The Arbitration Provision explained Trimble's right to reject arbitration "within 30 days after the date of this Agreement," and provided that such rejection "will not affect your right to Services or the terms of this Agreement (other than the Arbitration Provision)."  (*Id.*)  The Arbitration Provision also included a "Delegation Clause," which noted that "any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide."  (*Id.*)

Though Trimble paid off the account "in full" after about five months, she ultimately paid Defendant a total of $2,457.87 for the merchandise.  (ECF No. 4 ¶ 6.)  On March 1, 2024, Trimble filed a class action complaint[2] in the Circuit Court for Prince George's County against American First on behalf of herself and other similarly situated Maryland consumers, alleging violations of Maryland state law, including the Maryland Consumer Loan Law ("MCLL") and the Maryland Rental-Purchase Agreement Act ("MRPAA"). (ECF No. 4.).[3]  On April 3, 2024,

---

[2] Trimble "requests certification of a class of similarly situated persons." (ECF No. 4 at 5.) The Arbitration Provision also includes a class action waiver wherein the right to "participate in a class action in court or in arbitration, either as a class representative, class member or class opponent" is disallowed. (ECF No. 16 at 5 ¶ 7.)  As further explained below, because this Court finds the Arbitration Provision valid, this waiver applies, and Trimble must individually arbitrate. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 238–39, 133 S. Ct. 2304 (2013) (holding that the FAA permits waivers of class arbitrations where there is a valid arbitration agreement).

[3] Trimble alleges in her complaint that American First essentially extends credit when it offers rental-purchase agreements through its partners that are designed to function as loans and evade Maryland state usury laws (ECF No. 4 at 11), saying that in her transaction, "American First used a purported 'rental purchase ' form of transaction to disguise what was, in actuality, a loan." (*Id.* at 3 ¶ 9.) She asserts that American First "does not comply with Maryland's laws regulating either consumer rental-purchase agreements or loans." (ECF No. 4 ¶ 2.)

3

American First removed the action to this Court, pursuant to 28 U.S.C. § 1332(a)(1) and the Class Action Fairness Act of 2005 in 28 U.S.C. §§ 1332(d), 1453.[4] (ECF No. 1.) American First then filed a Motion to Compel Arbitration and to Dismiss on May 3, 2024 (ECF Nos. 15, 16). Trimble responded in opposition on June 7, 2024, (ECF No. 20), and American First replied (ECF No. 21). This matter is now ripe for review.

## STANDARD OF REVIEW

As Judge Chuang of this Court has previously explained, "Judges in this District have recognized that 'motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment.'" *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (quoting *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013)). Where, as here, formation or validity of the arbitration agreement is disputed, it is proper to treat a motion to compel arbitration as a motion for summary judgment. *Cherdak*, 437 F. Supp. 3d at 454. Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

---

[4] Trimble did not object to removal.

4

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 77–79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249–50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

The Federal Arbitration Act ("FAA") governs disputes over whether to compel arbitration. 9 U.S.C. §§ 1–16. Under the FAA:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C. § 2. The FAA is reflective of "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927 (1983).

To compel arbitration, a party must show that (1) a dispute exists between the parties, (2) there is a written agreement with an arbitration provision claimed to cover the dispute, (3) the transaction involves commerce, and (4) one party is refusing or neglecting to arbitrate. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). Ultimately, though, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513 (2000); *see also Stoner v. MacroGenics, Inc.*, Civ. No. SAG-23-02529, 2024 WL 327085, at *1 (D. Md. Jan. 29, 2024) ("Where a court finds a valid written arbitration agreement and a dispute within the scope of the agreement, it must compel arbitration and stay the litigation."). The FAA obligates a court to stay "any suit or proceeding" governed by arbitration "until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, and a "district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). "To be sure, courts will not blindly apply the presumption in favor of arbitrability." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 104 (4th Cir. 2012). Once a federal court finds that arbitration governs a dispute, "and a party has requested a stay of the court proceedings pending arbitration, the court does not have discretion to dismiss the suit on the basis that all claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475–76, 144 S. Ct. 1173, 1176 (2024).

In this case, American First argues that Trimble's claims must be individually arbitrated because the requirements to compel arbitration have been met, and Trimble must pursue her claims pursuant to the class action waiver located in the Arbitration Provision. (ECF No. 16

6

at 6, 9–10.) American First contends that nothing in either the Agreement or the Arbitration Provision is illusory because the change-of-terms provision (the "Change Clause") "appears outside the four corners of the Arbitration Provision," (ECF No. 21 at 3). Moreover, American First asserts that even if the Change Clause did apply to the Arbitration Provision, the parties would still be subject to the Provision because the Change Clause provides Trimble with notice.[5] (*Id.* at 7.) American First urges this Court to refrain from deciding whether the entire Agreement is valid, arguing that, under the Agreement's Delegation Clause, any question of validity of the Agreement must be decided by an arbitrator. (*Id.* at 8.)

In opposition, Trimble asserts that the federal presumption favoring arbitration agreements does not apply in this case because she is challenging the formation of the Arbitration Provision. (ECF No. 20 at 7.) She argues that because "American First reserved the right to unilaterally change the arbitration and delegation" agreements, the contract lacked consideration and was thus never validly formed. (*Id.* at 9.) Specifically, Trimble contends that the Change Clause permits American First to modify the Agreement—including the Arbitration Provision—such that any promise to arbitrate is illusory and no formation occurred. (*Id.* at 13.) For the same reasons, she argues that the Change Clause renders the Delegation Clause contained within the Arbitration Provision illusory. (*Id.* at 6 n.1.) Thus, Trimble asserts that this Court, not an arbitrator, must decide whether the parties formed an agreement to arbitrate.[6] (*Id.* at 11.)

---

[5] American First contends that "[e]ven if the Change Clause is applicable to the Arbitration Provision, there is still sufficient consideration to support the parties' mutual promises to arbitrate their disagreements because written notice would be required." (ECF No. 21 at 7.)

[6] Trimble argues that the question here regards formation of the contract, not its validity. (ECF No. 16 at 11.) She states that "Plaintiff's challenge that the arbitration and delegation agreements are illusory is a challenge to the formation and existence of any arbitration or delegation agreements." (*Id.*) Even if Trimble had challenged

7

The Court addresses the overall Arbitration Provision and the Delegation Clause in turn.

I. **Arbitration Provision**

Trimble argues that the Arbitration Provision is illusory because the Change Clause allows American First to unilaterally modify any part of the promise to arbitrate and contains no notice requirement or other restrictions on its ability to modify the Agreement. (ECF No. 20 at 15-16, 19-20.) American First asserts that the Arbitration Provision should be viewed separately from the broader Agreement, and Trimble's arguments essentially attack "the validity of the Agreement." (ECF No. 21 at 3–4, 8.) Additionally, American First contends that because the Change Clause does not apply to the Arbitration Provision, the Delegation Clause applies to require arbitration. (*Id.* at 8.)

"Arbitration is a matter of contract." *Hengle v. Treppa*, 19 F.4th 324, 334 (4th Cir. 2021) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772 (2010)). As Judge Bredar of this Court has explained, "[w]hether parties have a valid arbitration agreement governing a dispute is a question of applicable state contract law." *David v. Tesla Inc.*, 720 F. Supp. 3d 390, 396 (D. Md. Mar. 8, 2024). Under Maryland law, binding and enforceable contracts, including agreements to arbitrate, "ordinarily require consideration."[7] *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 661 (Md. 2003). Only when a promise

---

the Arbitration Provision's validity, this claim would not succeed. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements…" *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In this case, Trimble's right to reject the Arbitration Provision without rejecting the larger Agreement does not support any contention that the Arbitration Provision's terms are "so one-sided as to oppress or unfairly surprise an innocent party" or that there was "an egregious imbalance in the obligations and rights imposed" by the Arbitration Provision, which would go towards unconscionability. *Walther v. Sovereign Bank*, 872 A.2d 735, 747 (Md. 2005).

[7] The parties do not dispute the applicability of Maryland law here. (ECF No. 20 at 12; ECF No. 21.)

"constitutes a binding obligation" for another promise does it become consideration, for "[w]ithout a binding obligation, sufficient consideration does not exist to support a legally enforceable agreement." *Id.* at 148. A promise is illusory such that no valid contract exists when it does not "actually bind or obligate the promisor to anything." *Id.*

In this case, consideration supported the Arbitration Provision such that it was validly formed and binding on the parties. As an initial matter, the Change Clause—located on page three of the Agreement—does not render the Arbitration Provision on page four of the Agreement illusory. As the Supreme Court of Maryland has explained, arbitration clauses included in larger contracts are considered "to be severable therefrom" and are viewed as "independently enforceable contract[s]." *Cheek*, 835 A.2d at 664. Accordingly, though the Arbitration Provision in this case is within the larger Agreement rather than located on a separate document or page, the Court still must look to the "four corners" of the Arbitration Provision itself. *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 544 (4th Cir. 2005). The Change Clause is within the broader Agreement itself, but is not contained specifically within the Arbitration Provision. (ECF No. 16, Ex. A at 4, 3 ¶ 14.) Significantly, the Arbitration Provision appears in its own section of the Agreement, uses different numbering than the rest of the Agreement, and signals its separation from the broader contract by referring to the contract overall as the "Agreement." (ECF No. 16, Ex. A at 4.) Therefore, the Change Clause cannot form part of this Court's evaluation of the validity of the Arbitration Provision, which is an independent contract under Maryland law. *See, e.g.*, *Hill*, 412 F.3d at 544 ("In sum, the district court simply was not at liberty to go beyond the language of the Arbitration Agreement in determining whether the agreement contained an illusory promise.").

9

Furthermore, Trimble had the opportunity to reject arbitration and declined to do so. (*Id.* at 5.) Section 3 of the Arbitration Provision provided that Trimble could reject "within 30 days after the date of this Agreement…" and specifically noted, "[y]*our rejection of arbitration will not affect your right to Services or the terms of this Agreement (other than the Arbitration Provision)*." (*Id.*) Not only does this section distinguish the Arbitration Provision from the rest of the Agreement, but it also cuts against Trimble's argument that the Change Clause gave American First only unilateral power. (ECF No. 20 at 13.)

This case is distinguishable from the limited cases in which courts have held that a change clause renders a separate arbitration provision illusory. In *Johnson v. Continental Finance Co.*, 690 F. Supp. 520 (D. Md. 2023), this Court held an arbitration agreement illusory due in part to a change-in-terms clause that allowed the defendant to unilaterally change the arbitration provision at issue. *Id.* at 528–29. The court in *Johnson* found significant the defendant's subsequent "course of conduct" that eliminated the arbitration provision from the agreement without notice to the plaintiff. *Id.* at 528. There is no such conduct here. Rather, the Change Clause does not suggest American First may "modify" the Agreement "absent mutual assent" but requires any changes be made "in writing." *Stoner v. MacroGenics, Inc.* Civ. No. SAG-23-02529, 2024 WL 327085, at *2 (D. Md. Jan. 29, 2024); (ECF No. No. 16, Ex. 2 ¶ 21.) Thus, "any oral modification…would be invalid, even if Plaintiff reached mutual assent with…Defendant." *See Stoner*, 2024 WL 327085, at *2, *4 (deeming arbitration provision valid and enforceable in part because defendant's ability to modify agreement was limited to written modifications). Moreover, unlike in cases in which courts have held that modification provisions invalidated arbitration clauses, the Change Clause in this case appears

10

on a different page entirely in a provision that is part of the Agreement but separate from the Arbitration Provision (ECF No. 16, Ex. 2); *Compare Jones v. Prosper Marketplace, Inc.*, Civ. No. GJH-21-1126, 2022 WL 834210, at *15 (D. Md. Mar. 21, 2022) (deeming significant the modification provision's appearance "on the same page and directly above the arbitration provision" such that it rendered arbitration clause illusory) *with Hill*, 412 F.3d at 544 (holding arbitration clause was not illusory because, unlike in *Cheek*, the "reservation of rights" was not located in the arbitration agreement).

Accordingly, the Arbitration Provision is as a separate contract from the larger Agreement, and the Change Clause contained in the broader agreement does not apply to the Arbitration Provision. Because there is no illusory language located within the four corners of the Arbitration Provision, the Arbitration Provision has consideration and is a valid contract binding on the parties.[8]

## II.     The Delegation Clause

Trimble also challenges the formation of the Delegation Clause, located within the Arbitration Provision, which provides that "any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court to decide." (ECF No. 16 at Ex. A at 4 ¶ 1b.) When a court "assess[es] the enforceability of an arbitration agreement containing a delegation provision," it must first determine if a party challenges the enforceability of the delegation provision specifically or raises "a challenge to the enforceability of the arbitration agreement as a whole." *Gibbs v. Haynes Invs., LLC*, 967 F.3d

---

[8] Trimble limits her challenge to the issue of formation and presents no direct argument as to the validity of the Arbitration Provision.

332, 337-38 (4th Cir. 2020). If the court determines the delegation provision itself was challenged, it then decides if the provision is "unenforceable 'upon such grounds as exist at law or in equity.'" *Id.* (citing *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 455 (4th Cir. 2017)); *see also Jackson*, 561 U.S. at 70, 130 S. Ct. 2772 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."). "A party may contest the enforceability of the delegation clause with the same arguments it employs to contest the enforceability of the overall arbitration agreement." *Hengle v. Treppa*, 19 F.4th 324, 336 (4th Cir. 2021). In this case, Trimble explicitly challenges the formation of the Delegation Clause itself, arguing that the Change Clause renders the Delegation Clause illusory by permitting American First to "change or remove any promise to delegate arbitrability disputes."[9] *See* (ECF No. 20 at 6 n.1 ("Here, Plaintiff specifically challenges the formation of the delegation clause.").)

For the same reasons discussed above, the Change Clause does not apply to the Delegation Clause in the Arbitration Provision. As explained above, this Court's review is limited to the four corners of the Arbitration Provision itself. *See, e.g.*, *Hill,* 412 F.3d at 544. By its plain language, the Arbitration Provision in this case distinguishes its terms from those of the broader Agreement by allowing Trimble to reject the Arbitration Provision without it

---

[9] American First contends that despite Trimble's careful wording, she actually challenges the validity of the broader agreement such that this Court must leave it to an arbitrator to resolve all issues of arbitrability. (ECF No. 21 at 7-8.) Specifically, American First argues that the Delegation Clause is valid and enforceable, and if the Change Clause contained the illusory language Trimble alleges it would render the entire Agreement invalid. (ECF No. 21 at 8.) Despite American First's argument, this Court construes Trimble's challenge, consistent with its plain language, as a challenge to the formation of the delegation clause itself.

"affect[ing] [her] right to Services or the terms of this Agreement (other than Arbitration Provision)." (ECF No. 16, Ex. A at 5.) As in *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540 (4th Cir. 2005), the Change Clause does not explicitly point to the Arbitration Provision as being incorporated into the Agreement. *Id.* at 544 ("[L]ooking at the four corners of the separate Arbitration Agreement, the agreement contains no such illusory promise."). As such, the Change Clause does not affect the Delegation Clause within the Arbitration Provision.

As the Supreme Court has explained, "a federal court may consider only issues relating to the making and performance of an agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). In this case, the parties agreed in the Arbitration Provision to leave the validity of the broader Agreement to an arbitrator. (ECF No. 16 at Ex. A at 4 ¶ 1b.) Accordingly, this Court addresses only the formation of the Arbitration Provision itself and makes no determination as to the validity of the broader Agreement. To the extent that Trimble seeks to challenge the validity of the entire Agreement, that challenge must be decided by an arbitrator consistent with the Delegation Clause of the valid Arbitration Provision.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration (ECF No. 15) is GRANTED and this case is STAYED pending arbitration. The parties' agreement was supported by valid consideration such that they formed an agreement to arbitrate.

For the reasons stated above, it is the 21st day of February 2025 ORDERED that:

1. Defendant's Motion to Compel Arbitration (ECF No. 15) is GRANTED;

2. This matter will be STAYED while the parties litigate their claims and defenses against each other before an arbitrator; and,

3. The Clerk of this Court shall transmit copies of this Memorandum Order to counsel of record.

Dated: February 21, 2025

/s/
_____
Richard D. Bennett
United States Senior District Judge