IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KAITLYN TRIMBLE, *individually, and on behalf of all others similarly situated,* | * | |
| | * | |
| *Plaintiff,* | | |
| v. | * | Civil Action No. RDB-24-0969 |
| AMERICAN FIRST FINANCE, LLC, | * | |
| *Defendant.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This contract dispute arose from a purchase order agreement between Plaintiff Kaitlyn Trimble ("Plaintiff" or "Trimble") and Defendant American First Finance, LLC ("Defendant" or "American First"). On February 21, 2025, this Court issued a Memorandum Order (ECF No. 22) granting Defendant's Motion to Compel Arbitration (ECF No. 15) and staying this action pending the completion of the arbitration process. *See* (ECF No. 22). Currently pending before this Court is Plaintiff's Motion for Reconsideration or, in the Alternative, for Certification of Appeal Under 28 U.S.C. § 1292(b) (ECF No. 23; ECF No. 24-1) ("Plaintiff's Motion"). The U.S. Court of Appeals for the Fourth Circuit's decision in *Johnson v. Continental Finance Company, LLC*, 131 F.4th 169 (4th Cir. 2025), issued several weeks *after* this Court's Memorandum Order, demands reconsideration of this Court's decision. (ECF No. 27 at 1.)

In her Motion, Plaintiff requests that this Court either revise its prior Memorandum Order (ECF No. 22) or, alternatively, certify the arbitration issue for appeal under 28 U.S.C. § 1292(b). (ECF No. 24-1 at 3.) In brief, Plaintiff contends that the Court committed clear error of law by ruling in a manner inconsistent with cases she asserts are controlling. (ECF

1

No. 24-1 at 3, 8.) Defendant has responded in opposition (ECF No. 26), and Plaintiff has replied (ECF No. 27). In her reply, Plaintiff argues that the Fourth Circuit's decision in *Johnson* compels reconsideration. (ECF No. 27 at 1.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Plaintiff's Motion for Reconsideration (ECF No. 23) is GRANTED.[1] Specifically, the Court VACATES its previous Memorandum Order (ECF No. 22) and now DENIES Defendant's Motion to Compel Arbitration (ECF No. 15). As such, the Stay in this case is LIFTED.

## BACKGROUND

The Memorandum Order (ECF No. 22) dated February 21, 2025, provided a detailed factual and procedural background of this case that need not be repeated in full here. (ECF No. 22 at 2–4.) The Court provides a brief overview of the relevant facts below.

On July 14, 2023, Trimble purchased several items of furniture from retailer American Freight, which partners with American First. (ECF No. 22 ¶ 98–101.) To facilitate the purchase, Trimble signed a six-paged Consumer Rental-Purchase Agreement ("Agreement"). (ECF No. 16, Ex. 2.) On its third page, the Agreement included a "Change Clause" providing that "no changes may be made to this Agreement except by [American First] in writing." (*Id.* ¶ 21.) Beginning on the fourth page of the Agreement, a separately titled and separately numbered Arbitration Provision allowed either party to invoke arbitration as to "any claim, dispute, or controversy" arising under or related to the Agreement:

> [The Arbitration Provision] sets forth when and how claims…will be arbitrated instead of litigated in court. This arbitration provision governs "claims" you assert against us or any "related party" of ours and "claims" we or any related

---

[1] Because the Court grants Plaintiff's Motion for Reconsideration, the Court does not reach her alternative argument for certification of appeal.

> party assert against you . . . . Unless prohibited by applicable law and unless you reject the Arbitration Provision . . . you and we agree that either party may elect to require arbitration of any Claim . . . .

(ECF No. 16 at 2.) The Arbitration Provision informed Trimble that she had the right to reject arbitration "within 30 days after the date of this Agreement" and such rejection "will not affect [Trimble's] right to Services or the terms of this Agreement (other than the Arbitration Provision.)" (*Id.*) The Arbitration Provision also included a "Delegation Clause," which provided that "any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide." (*Id.*)

Trimble ultimately paid $2,457.87 for the merchandise over a period of five months, even though the Agreement listed a purchase price of $1,779.94. (ECF No. 4 ¶ 6.) On March 1, 2024, Trimble filed a putative class action against American First in the Circuit Court for Prince George's County, Maryland.[2] (ECF No. 4.) American First timely removed to this Court pursuant to 28 U.S.C. §§ 1332(a),(d), 1453, on April 3, 2024. (ECF No. 1.) American First filed a Motion to Compel Arbitration (ECF Nos. 15, 16), which this Court granted by Memorandum Order dated February 21, 2025, (ECF No. 22).

Plaintiff filed a Motion for Reconsideration (ECF No. 23) ("Plaintiff's Motion") on March 7, 2025. In that Motion, Trimble argues that this Court committed clear error by failing to follow *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288 (4th Cir. 2022) and relying on *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540 (4th Cir. 2005) and *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656 (Md. 2003). Specifically, Plaintiff asserts that the Memorandum Order

---

[2] As noted in this Court's previous Memorandum Order (ECF No. 22 at 3 n.2), the Arbitration Provision included a class action waiver such that, if properly formed and valid, the Arbitration Provision compels individual arbitration. *See* (*id.*); *see also AM. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 238–39 (2013) (holding FAA permits waivers of class arbitration where there exists a valid arbitration agreement).

3

conflicts with *Coady* and *Cheek*. Defendant has responded in opposition, arguing that Plaintiff's Motion merely reiterates arguments the Court has already rejected. *See* (ECF No. 26 at 2, 4.) In a subsequent notice and in her reply to Defendant's opposition, Plaintiff argues that reconsideration or certification of appeal is appropriate given the Fourth Circuit's opinion in *Johnson v. Continental Finance Company, LLC*, 131 F.4th 169 (4th Cir. 2025), which was issued approximately three weeks after the Court's Memorandum Order.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). As Judge Gallagher of this Court has noted, although "the Fourth Circuit has not clarified the precise standard applicable to motions for reconsideration, . . . courts in this District frequently look to the standards used to adjudicate Rule 59(e) and 60(b) motions for guidance when considering Rule 54(b) motions for reconsideration." *Jahn v. Tiffin Holdings Inc.*, No. SAG-18-1782, 2020 WL 4559927, at *1 (D. Md. May 13, 2020). Accordingly, motions for reconsideration might be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Id.* (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)). Or, a motion might be granted "if one of the following is present: '(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or

4

misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief.'" *Jahn*, 2020 WL 4559927, at *2 (quoting *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018)).

Motions for reconsideration are "an extraordinary remedy which should be used sparingly." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009); *Peckey v. Bank of Am.*, Civ. No. RDB-14-433, 2016 WL 6951940, at *1 (D. Md. Nov. 28, 2016); *Siple v. First Franklin Fin. Corp.*, Civ. No. RDB-14-2841, 2015 WL 6163791, at *2 (D. Md. Oct. 19, 2015) ("Where a party seeks reconsideration on the basis of manifest error, the earlier decision cannot be 'just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.'" (quoting *TFWS*, 572 F.3d at 194)). "Resolution of the motion is 'committed to the discretion of the district court[.]'" *Ficep Corp. v. Voortman USA Corp.*, Civ. No. WDQ-13-0429, 2015 WL 1401881, at *3 (D. Md. Mar. 24, 2015) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)).

**ANALYSIS**

In her Motion, Plaintiff asserts that the Court committed clear error by issuing a ruling she deems inconsistent with *Coady v. Nationwide Motor Sales Corporation*, 32 F.4th 288 (4th Cir. 2022), and *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656 (Md. 2003). Specifically, Trimble challenges this Court's conclusion that the Change Clause in the Agreement does not apply to the Arbitration Provision. (ECF No. 24-1 at 7–10.) In a subsequent notice and in her reply to Defendant's opposition, Trimble contends that the Court's Memorandum Order conflicts with the intervening controlling authority in *Johnson v. Continental Finance Company*, 131

F.4th 169 (4th Cir. 2025),[3] which was decided after this Court's Memorandum Order. (ECF No. 27 at 2–5; ECF No. 25.) In opposition, Defendant argues that Trimble merely reiterates arguments the Court has already rejected. *See* (ECF No. 26 at 2, 4.) Moreover, Defendant contends that the Court already distinguished the facts of this case from those at issue in *Johnson*.[4] (*Id.* at 5–6.)

As explained below, this Court's decision was consistent with *Coady, Cheek*, and *Hill*, but the Fourth Circuit's recent opinion in *Johnson* marks a shift in controlling authority that compels this Court to apply the Change Clause in the Agreement to the Arbitration Provision. As explained in this Court's previous Memorandum Order, the Maryland Supreme Court in *Cheek* determined that arbitration agreements are independent contracts that require independent consideration. *See* (ECF No. 22 at 9 (citing *Cheek*, 835 A.2d at 664)). In *Hill*, the Fourth Circuit relied on *Cheek* to hold that courts evaluating arbitration provisions under Maryland law may not look beyond the "four corners" of the arbitration provision. 412 F.3d at 544. In *Coady*, the Fourth Circuit held that courts evaluating arbitration provisions under Maryland law may look beyond the four corners of the arbitration provision where the

---

[3] Plaintiff also references cases in which parties before this Court raised similar challenges to the formation arbitration agreements, including *Bailey v. Mercury Financial, LLC*, 694 F. Supp. 3d 613, 622–23 (D. Md. 2023) and *Ford v. Genesis Financial Solutions, Inc.*, 726 F. Supp. 3d 441, 454 (D. Md. 2024). Since Plaintiff filed her Motion, the Fourth Circuit filed an unpublished opinion affirming *Bailey* because it "considered and rejected these same arguments in *Johnson v. Continental Finance Company*. . . ." *Bailey v. Mercury Fin., LLC*, 2025 WL 763671, at *1 (4th Cir. Mar. 11, 2025) (per curiam); *see King v. Blankenship*, 636 F.2d 70, 72 (4th Cir. 1980) (explaining unpublished opinions are not binding precedent in the Fourth Circuit). The Fourth Circuit has not yet issued an opinion in *Ford*. The parties fully briefed the applicability of *Coady* in their filings related to Defendant's Motion to Compel Arbitration, which was the subject of the Memorandum Order that Plaintiff contests here. For this reason, the Court concludes that the Fourth Circuit's opinion in *Johnson* represents the only new development in the caselaw since the filing of the Memorandum Order.
[4] This Court's Memorandum Order distinguished the facts of this case from the trial court's decision in *Johnson*, *see* (ECF No. 22 at 10–11), but the Fourth Circuit's decision affirming *Johnson* was decided after this Court's Memorandum Order.

signature page contained the modification clause at issue and explicitly incorporated the arbitration provision.[5]  *Coady*, 32 F.4th at 291–92.  *Johnson* marked the first time, however, that the Fourth Circuit applied a Change Clause not appearing or incorporated within an arbitration agreement to that arbitration agreement such that it rendered illusory a defendant's promise to arbitrate.  131 F.4th at 179.

Before applying the Fourth Circuit's holdings in *Johnson* to the instant case, the Court emphasizes "that a federal court sitting in diversity has a duty to apply the operative state law as would the highest court of the state in which the suit was brought."  *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992).  Defendant removed this action to federal court based on diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. (ECF No. 1 ¶¶ 5, 6, 11–13.)  "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  "It is the duty of the federal appellate courts, as well as the trial court, to ascertain and apply state law where, as in this case, it controls decision." *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944); *see also Vandenbark v. Owens-Illinois Co.*, 311 U.S. 538, 543 (1941) ("[T]he duty rests upon federal courts to apply state law under the Rules of Decision statute in accordance with the then controlling decision of the highest state court.").  As Plaintiff herself framed the issue before this Court: "The question presented here involves fundamental contract principles for the Court, not an arbitrator, to decide—whether, *under Maryland law*, any arbitration or delegation agreements exist."  (ECF

---

[5] Trimble repeatedly notes that this Court did not reference *Coady* in its prior Memorandum Opinion.  As explained below, the contract in *Coady*—which involved explicit and repeated cross-references between the arbitration agreement and the modification provision—is so distinct from that at issue in this case that the Court deemed it inapplicable to the facts of Trimble's case.

7

No. 20 at 16 (emphasis added).) Thus, as the Court explained in its prior Memorandum Order, whether the parties to this action formed an agreement to arbitrate is a question of Maryland contract law.[6] (ECF No. 22 at 8 (quoting *David v. Tesla Inc.*, 720 F. Supp. 3d 390, 396 (D. Md. 2024).)

As this Court determined in its prior Memorandum Order, "[t]his case is distinguishable from the limited cases in which courts have held that a change clause renders a separate arbitration provision illusory." (ECF No. 22 at 10.) This conclusion included *Coady*, which involved facts distinct from those of this case, and which the parties fully briefed in their filings before this Court.[7] The Fourth Circuit in *Coady* determined that an employment contract's Acknowledgement Receipt—which contained the relevant change clause—was part of the arbitration agreement because:

> The fifth paragraph of the Arbitration Agreement incorporates the Receipt, stating that an employee's "signature on the 'Employee Handbook and Operation Procedures' Acknowledgement Receipt . . . confirm[s] that [he] ha[s] read and understand[s] each of the four sections set forth above in this Agreement." In operation, an employee signs the Receipt to assent to the Agreement. The Receipt itself also specifically identifies the Arbitration Agreement as one of the Handbook sections to which the Receipt "specially" applies.

---

[6] "Typically, the Fourth Circuit's prediction as to how a state's highest court would resolve a particular issue 'is binding on district courts in this circuit.'" *Blanch v. Chubb & Sons, Inc.*, 124 F. Supp. 3d 622, 631 (D. Md. 2015) (quoting *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009)).

[7] Unlike the contract in *Coady*, where the arbitration agreement was specifically listed in the section of the contract containing the modification clause at issue, the Arbitration Provision is not referenced in the Change Clause here, which only refers to "this Agreement." (ECF No. 16-3 at 4 ¶ 21.) At bottom, the holding in *Coady* rested on the Fourth Circuit's conclusion that "the [Arbitration] Agreement incorporated the Receipt by expressly requiring an employee to sign it as part of the Agreement" such that it was proper to evaluate the Receipt as part of the Arbitration Agreement. 32 F.4th at 293. That is not the case here, where there is no reference to the Change Clause in the Arbitration Provision; there was no express requirement that Trimble sign the Change Clause as part of the Arbitration Provision; Trimble was able to separately reject the Arbitration Provision; and the Arbitration Provision was separately titled, separately numbered, and appeared on a different page than the Change Clause. *See* (ECF No. 22 at 9.)

8

*Coady*, 32 F.4th at 292 (alterations in original) (quoting from record).

In this case, as explained in the Memorandum Order, the Arbitration Provision is separate from the rest of the contract and does not incorporate the Change Clause. *See* (ECF No. 22 at 9 ("As the Supreme Court of Maryland has explained, arbitration clauses included in larger contracts are considered 'to be severable therefrom' and are viewed as 'independently enforceable contract[s].'" (quoting *Cheek*, 835 A.2d at 664)). Specifically, the Court determined that "the Arbitration Provision appears in its own section of the Agreement, uses different numbering than the rest of the agreement, and signals its separation from the broader contract by referring to the contract overall as the 'Agreement.' Therefore, the Change Clause cannot form part of this Court's evaluation of the validity of the Arbitration Provision, which is an independent contract under Maryland law.'"[8] (*Id.* (citing *Hill*, 412 F.3d at 544).) This Court reached the same conclusion regarding the applicability of a change clause to an arbitration provision within a broader contract in several recently decided cases. *See, e.g.*, *William Wood v. NFM, Inc.*, Civ. No. GLR-24-2207, 2025 WL 695604, at *6 (D. Md. Mar. 5, 2025); *Stoner v. MacroGenics, Inc.*, Civ. No. SAG-23-2529, 2024 WL 327085 (D. Md. Jan. 29, 2024); *Zayanderoudi v. Nat'l RR Passenger Corp.*, Civ. No. TJS-22-2455, 2023 WL 4744746, at *4 (D. Md. July 25,

---

[8] Trimble also argues that, under *Johnson*, the severability doctrine from *Cheek* relates to the validity of a contract and has no application to formation arguments like that raised in this case. (ECF No. 27 at 6.) *Johnson* rejected the argument that a "challenge to the agreement's formation must be resolved by the arbiter under the 'severability principle'" because that principle relates to "a challenge to the *validity* of [a] contract,' not a challenge to its *formation*." *Johnson v. Continental Finance Company, LLC*, 131 F.4th 169, 176 (4th Cir. 2025) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006)). Thus, the Fourth Circuit rejected the argument that contract formation issues must be resolved via the arbitration process. *Id.* This Court reached the same conclusion in its Memorandum Order, in which it analyzed whether consideration existed to support the Arbitration Provision or whether the Change Clause rendered American First's promise to arbitrate illusory such that no consideration—and no formation—occurred. *See, e.g.*, (ECF No. 22 at 9 ("In this case, consideration supported the Arbitration Provision such that it was *validly formed* and binding on the parties." (emphasis added)). The Court squarely reached the formation issue and, like *Johnson*, relied on *Cheek*. *See* (ECF No. 22 at 9–11); *Johnson*, 131 F.4th at 179.

9

2023); *Lyons v. PNC Bank, N.A.*, Civ. No. SAG-20-2234, 2021 WL 50918, at *6 (D. Md. Jan. 6, 2021) *rev'd on other grounds* 26 F.4th 180 (4th Cir. 2022); *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 458 (D. Md. 2020).

Several weeks after this Court filed its Memorandum Order, however, the Fourth Circuit issued its published opinion in *Johnson*, in which it held that a change clause not appearing, incorporated, or referenced in an arbitration provision rendered illusory a promise to arbitrate such that no arbitration agreement was formed. 131 F.4th at 179. Specifically, the Fourth Circuit determined:

> *Cheek* does establish that an arbitration agreement is an "independently enforceable contract" and that courts should not go "beyond the confines of the arbitration agreement itself" when determining if an agreement was formed. The court did not say, however, that the terms of the arbitration agreement are artificially limited to the words that happen to appear under the "arbitration provision" heading. Under Maryland law, courts "'construe the contract as a whole' and decline to 'read each clause or provision separately.'"

*Johnson*, 131 F.4th at 179 (internal citations omitted). The Fourth Circuit then explained that the limitation that any changes be provided with "such notice . . . required by law" was not sufficient to prevent the change clause from rendering illusory the defendant's promise to arbitrate. *Id.* at 180. Specifically, the Fourth Circuit determined that under Maryland law, "an advance notice requirement is necessary to make a change clause enforceable." *Id.*

These holdings mark a significant departure from prior cases in which the Fourth Circuit and this Court required express incorporation of an arbitration provision before applying a change clause to that provision. *See, e.g.*, *Coady*, 32 F.4th at 291–92 (holding courts evaluating arbitration provisions under Maryland law may look beyond the four corners of the arbitration provision where "'the language of the arbitration agreement itself' incorporates the

10

Acknowledgement Receipt . . . ." (quoting *Hill v. Peoplesoft USA, Inc.*, 412 F.3d at 543)); *Hill*, 412 F.3d at 543 (holding court should consider "only the language of the arbitration agreement itself"); *Jones v. Prosper Marketplace, Inc.*, Civ. No. GLH-21-893, 2022 WL 834210, at *15– *17 (D. Md. Mar. 21, 2022) (applying *Coady* and *Hill* to hold modification provision rendered promise to arbitrate illusory where it was unfettered and contained on same page as arbitration provision but not where arbitration provision was on separate document); *William Wood*, 2025 WL 695604, at * 6 (D. Md. Mar. 5, 2025) (applying *Cheek* and *Hill* to hold that the court cannot look beyond arbitration provision); *see also Ford v. Genesis Fin. Sols., Inc.*, 726 F. Supp. 3d 441, 451–52 (D. Md. 2024) (explaining "the Maryland Supreme Court has not addressed whether court should consider a clause that generally applies to the entire contract as part of the parties' agreement to arbitrate when the arbitration clause does not expressly incorporate that extrinsic clause"). That is, *Johnson* appears to invalidate many of the cases in which this Court declined to apply a separate modification provision to an arbitration agreement contained in the same contract but not appearing near or expressly referenced in the modification provision. *See, e.g.*, *Lyons*, 2021 WL 50918, at *6 *rev'd on other grounds* 26 F.4th 180 (4th Cir. 2022); *Zayanderoudi*, 2023 WL 4744746, at *4; *Cherdak*, 437 F. Supp. 3d at 458.

Applying the holding of *Johnson* to the Arbitration Provision and Change Clause at issue in this case, the reasoning behind this Court's Memorandum Order cannot stand. In the Memorandum Order, this Court first determined that the Change Clause was separate from the arbitration provision such that it did not apply to that provision. Based on *Johnson*, however, *Cheek* did not hold "that the terms of the arbitration agreement are artificially limited to the words that happen to appear under the 'arbitration provision' heading." *Id.* at 179.

11

Thus, even absent express incorporation like that found in *Coady*, a court must consider the entire contract when construing an arbitration provision. *Id.* As such, the Court must apply the Change Clause to the Arbitration Provision when determining whether there existed consideration to form an agreement to arbitrate.

In its Memorandum Order, this Court determined that even if the Change Clause were to apply to the arbitration provision, the requirement that any changes be made in writing would prevent the Change Clause from rendering illusory American First's agreement to arbitrate. *See* (ECF No. 22 at 10 (quoting *Stoner*, 2024 WL 327085, at *2)). The Fourth Circuit's opinion in *Johnson*, however, requires that the Court reconsider this determination. Specifically, *Johnson* squarely suggested that a change clause must contain "plain language" requiring "prior notice." *Johnson*, 131 F.4th at 180. In this case, as the Court explained in its Memorandum Order, the Change Clause requires written notice but does not include any express requirement that notice be provided in advance of the changes. Thus, the plain language of the Change Clause would allow American First to withdraw its mutual promise to arbitrate and only notify Trimble of that change in writing *after* it had been made. Under *Johnson*, therefore, the written notice limitation in the Change Clause is insufficient to prevent the Change Clause from rendering illusory American First's promise to arbitrate. *See id.* at 180–81.

Accordingly, *Johnson* marks an intervening change in controlling law that requires this Court to reconsider its Memorandum Order. Under *Johnson*, the Change Clause both applies to the Arbitration Provision in this case and lacks a sufficient notice requirement. That is, because the Change Clause applies to the Arbitration Provision and lacks any requirement for advance notice, it enables American First to withdraw or change its promise to arbitrate in a

12

manner that renders that promise illusory. Under Maryland law, an arbitration agreement lacks consideration—and thus was never formed—when it is based on an illusory promise. *See Cheek*, 835 A.3d at 662; *Johnson*, 131 F.4th at 178. As such, the parties in this action cannot have formed any agreement to arbitrate because American First's purported promise to arbitrate all claims was illusory.

Although a motion for reconsideration "is not a license for a losing party's attorney to get a 'second bite at the apple,'" *Van Hecke v. United States*, 2015 WL 1384135, at *1 (D. Md. Oct. 23, 2015) (quoting *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Co. 1988), it may be granted in a court's discretion "to accommodate an intervening change in controlling law," *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). The Fourth Circuit's intervening decision in *Johnson* invalidates the reasoning behind this Court's Memorandum Order. Furthermore, the Fourth Circuit's suggestion in *Johnson* that a change clause must explicitly allow for "prior notice" to avoid rendering illusory a promise to arbitrate necessitates reconsideration of this Court's previous holding. To bring the Memorandum Order (ECF No. 22) in line with the Fourth Circuit's intervening holding in *Johnson*, Trimble's Motion for Reconsideration (ECF No. 23) is GRANTED.[9]

---

[9] As noted above, because the Court grants Trimble's Motion for Reconsideration, it does not reach her alternative argument for certification of appeal.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Reconsideration is GRANTED, and the Court does not reach Plaintiff's alternative argument for certification for appeal.

A separate Order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge

Date: April 15th, 2025